**Richmond**

BUDDY MERCI HERNANDEZ

v.

COMMONWEALTH OF VIRGINIA

No. 0353-90-2

Decided June 18, 1991

670

COUNSEL

Victor M. Glasberg (Jeanne Goldberg; Victor M. Glasberg & Associates, on briefs), for appellant.

Richard B. Smith, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—In this appeal, the appellant challenges the constitutionality of Code § 18.2-422, which prohibits a person from wearing a mask in public. He contends that the statute is unconstitutional on its face and as applied to him. Appellant also contends that the trial court impermissibly considered his beliefs in imposing punishment. We hold that Code § 18.2-422 is constitutional on its face and as applied to the appellant. Furthermore, we conclude that the trial court did not consider the appellant's be-

liefs when it imposed sentence on him.

The appellant is a member of the Ku Klux Klan. Shortly after noon on Sunday, August 13, 1989, he was seen by the police wearing a long, white robe, a hood on his head, and a mask covering his entire face except for his eyes. He was standing on the sidewalk of a public street in Fredericksburg in front of a bank, directly across the street from a church. He had two companions. One was a woman wearing a long, white robe. According to the appellant, she held a hood in her hands but did not wear it. The other companion, a man, was wearing a camouflage jacket. The police arrested the appellant for wearing a mask in public in violation of Code § 18.2-422.[1]

At trial, the appellant testified that he wore the hood as "part of the symbolic symbol of the Klan." A witness, Roger Kelly, described himself as the "Grand Dragon" of Virginia's Klan and testified that a Klansman has the option of wearing a mask or not but that "the uniform is set up to wear the mask."

At the conclusion of the evidence, the trial court found that the "mask is not a part of the, a necessary part, of the symbolic speech of this particular organization." The trial judge explained that "this organization and its members can express themselves fully without the need for that liner or that mask to go across the face."

The appellant first argues that Code § 18.2-422 is unconstitutional on its face because it is overbroad. He contends that, regardless of whether his own conduct may constitutionally be regulated, the statute impermissibly deters or "chills" constitutionally protected expression. *See Gooding v. Wilson*, 405 U.S. 518, 520-21 (1972); *Dombrowski v. Pfister*, 380 U.S. 479, 491 (1965).

In order to find this statute facially invalid, we must first determine whether it "reaches a substantial amount of constitutionally protected conduct." *Boos v. Barry*, 485 U.S. 312, 329 (1988). The chilling effect on legitimate expression must be both

---

[1] Code § 18.2-422: It shall be unlawful for any person over sixteen years of age while wearing any mask, hood or other device whereby a substantial portion of the face is hidden or covered so as to conceal the identity of the wearer, to be or appear in any public place, or upon any private property in this Commonwealth without first having obtained from the owner or tenant thereof consent to do so in writing.

"real and substantial." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975). However, the statute "should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts." *Id.*

The appellant argues that the statute prohibits persons from wearing ski masks in the winter, Muslim women from wearing traditional outfits covering their faces, widows from wearing black veils, and other similar face coverings. He argues that this prohibition is unconstitutional because it criminalizes personal expression. We decline to read Code § 18.2-422 as broadly as the appellant suggests we should.

■ The statute makes it illegal for any person over the age of sixteen to appear in a public place wearing a mask covering a substantial part of the face "so as to conceal the identity of the wearer." Code § 18.2-422. These words "so as to conceal the identity" express a requirement of intent. Therefore, to violate the statute, an individual must *intend* to conceal his identity by covering his face. *See State v. Miller*, 260 Ga. 669, ____, 398 S.E.2d 547, 552 (1990). So construed, this statute does not prohibit the masking of one's face for a purpose other than concealing one's identity, such as protection from cold weather, expression of grief, or practice of a religion.

■ The appellant contends that the record does not support a finding that he intended to conceal his identity. He contends that the evidence showed only that he wore the mask for symbolic purposes, not concealment. We disagree. A trier of fact may infer that a person intends the natural consequences of his or her acts. *Kelly v. Commonwealth*, 8 Va. App. 359, 373, 382 S.E.2d 270, 278 (1989). Therefore, evidence in this case that the mask covered the appellant's face except for his eyes was sufficient to support the verdict. The trier of fact was free to accept or reject the appellant's testimony or any other evidence concerning a contrary intent.

■ The appellant also argues that the statute is unconstitutional as applied to him because it penalizes him for engaging in disfavored symbolic speech. This is so only if the appellant's wearing of the mask constitutes expressive activity permitting him to invoke the first amendment. *See Texas v. Johnson*, 491 U.S. 397, 402-03 (1989). In order for appellant's conduct to fall within the

scope of first amendment protection, he must have intended to convey a particularized message by wearing the mask, and there must have been a great likelihood that the message would be understood by those who viewed it. *Id.* at 404.

This record does not support a finding that the wearing of a mask conveyed a particularized message that would have been likely to have been understood by those who viewed it. The record does not establish, as the appellant contends, that the mask is so identified with the Ku Klux Klan that it is a symbol of its identity. The robe and the hood may be such symbols, but the mask is not. The mask worn without the robe and the hood would be meaningless. The mask adds nothing, save fear and intimidation, to the symbolic message expressed by the wearing of the robe and the hood. Without the mask, the social and political message conveyed by the uniform of the Ku Klux Klan is the same as it would be with the mask.

Even if the wearing of the Ku Klux Klan mask constitutes expressive conduct protected by the first amendment, the statute is constitutional if its purpose is unrelated to the suppression of free expression. *Id.* at 403. A statute which restricts expressive conduct because of the message it conveys is subject to "the most exacting scrutiny." *Id.* at 412. On the other hand, a statute which is directed at the "secondary effects" of the regulated speech, and whose justification has nothing to do with that speech is content-neutral. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48 (1986) (ordinance regulating adult theaters properly analyzed as content-neutral when justifications include prevention of crime, maintenance of property values, and protection of residential neighborhoods). A statute is content-neutral if it is one in which "the governmental interest is unrelated to the suppression of free expression." *United States v. O'Brien*, 391 U.S. 367, 377 (1968). Such a statute is constitutional so long as it furthers an important governmental interest and "the incidental restriction on alleged First Amendment freedoms is not greater than is essential to the furtherance of that interest." *Id.*

We acknowledge that the legislature's original motivation for enacting the anti-mask statute may have been to "unmask the Klan." The statute was, after all, created in the same act with statutes prohibiting cross burning and intimidation, activities historically associated with the Klan. *See* 1952 Va. Acts c. 483.

However, whatever motivation might have prompted the anti-mask statute's enactment, the purpose of the statute is no more than what appears in the plain language of the statute. *See Brown v. Lukhard,* 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). The statute simply forbids the wearing of masks under certain circumstances. An obvious justification for such a prohibition is the prevention of violence, crime and disorder by the unmasking of potential criminals. For example, a potential rapist or bank robber wearing a mask could just as easily be prosecuted under this statute as a Klansman. *See Commonwealth v. Ballentine,* No. CR89-395 (Cir. Ct. of the City of Roanoke Sept. 6, 1989) (defendant wearing ski mask in the commission of abduction, sodomy, rape and robbery convicted of wearing mask).

The plain language of Code § 18.2-422 indicates no purpose to stifle the Klan's freedom of expression. Further, nothing in the record shows an indiscriminate enforcement of the statute against members of the Klan. The justification for prosecuting an individual under this statute is the same whether or not that individual is a Klansman. The incidental effect of preventing a Klansman, such as the appellant, from wearing his "full costume" is minor when compared to the government's interest in keeping communities safe and free from violence. We conclude, therefore, that Code § 18.2-422 is not unconstitutional as applied to the appellant.

Finally, the appellant contends that a comment by the trial court at the sentencing hearing demonstrated that the court impermissibly punished the appellant for his disfavored views. Before sentencing the defendant, the trial judge stated that, "[d]espite the fact that I disagree with [the appellant's beliefs] wholeheartedly, I am not going to punish him unduly because of those beliefs."

The appellant misinterprets the trial judge's comment. The appellant would read the remark to mean that the trial judge was going to punish the appellant because of his beliefs, but not to an extent to which the appellant was not due. We, however, read this remark to mean that the trial court would not punish him because of his beliefs to an extent to which he would not otherwise be deserving. Neither the record nor the sentence which was imposed (a thirty day jail sentence suspended and a $1,000 fine) reflects that the appellant's unpopular views in any way were considered by the trial court in its imposition of sentence.

For these reasons, we conclude that the judgment of conviction should be affirmed.

*Affirmed.*

Cole, J.,* and Willis, J., concurred.

---

\* Judge Cole participated in the hearing and decision of this case prior to the effective date of his retirement on April 30, 1991 and thereafter by designation pursuant to Code § 17-116.01.