COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Senior Judge Hodges
Argued at Norfolk, Virginia


McQUAY JOHN KIAH
                                    MEMORANDUM OPINION*
v.        Record No. 2506-95-1    BY JUDGE JOSEPH E. BAKER
                                       NOVEMBER 5, 1996
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Luther C. Edmonds, Judge

             Wesley A. Murphy for appellant.

             Leah A. Darron, Assistant Attorney General
             (James S. Gilmore, III, Attorney General, on
             brief), for appellee.


     McQuay John Kiah (appellant) appeals from his bench trial

convictions for malicious wounding, threatening to kill his wife,

and assaulting his eight-and-one-half-month-old son in violation

of Code § 18.2-57.2.  As the parties are familiar with the facts,

we recite only those necessary to an understanding of this

opinion.  Upon familiar principles, we state the evidence in the

light most favorable to the Commonwealth, granting to it all

reasonable inferences fairly deducible therefrom.  Higginbotham

v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

     Appellant and Mary Hoskins (Hoskins) were married and lived

together with their eight-and-one-half-month-old son (the baby)

on the first floor of a home co-owned by appellant and his

_____

     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

mother.  Tenants rented the rooms on the second floor of the house.

On Sunday morning, May 7, 1995, appellant struck Hoskins in the face.  Hoskins tried to flee the room with the baby in her arms as appellant grabbed a knife and repeatedly stated, "I'm going to kill you, you Bitch."  Hoskins screamed for help and ran up the steps toward a neighbor's apartment.  Appellant grabbed her from behind, and she fell down the steps with the baby in her arms.  Hoskins later determined that the baby had a black eye, bruised ribs, and was bleeding from his mouth.

A neighbor took the baby from Hoskins.  When Hoskins returned downstairs, appellant repeatedly kicked Hoskins in the stomach while he continued to state, "I'm going to kill you, you whore, you slut, you bitch . . . . "  Appellant grabbed Hoskins and threw her out the door, causing her to strike her head and shoulder on the concrete porch.  Thereafter, appellant entered his minivan and tried to run over Hoskins.

Police Officer Sugars (Sugars) responded to a call and arrived at the scene to find appellant proceeding to his vehicle which was on the grass.  Sugars watched him drive across the grass and down the sidewalk.  Sugars ordered appellant to stop, but he refused until his path was blocked by another vehicle. Sugars asked what was the problem and appellant responded, "Fuck you.  You don't have anything to do with this.  I kicked my wife's ass.  So what.  What are you going to do about it?"

Appellant then moved toward his wife. Sugars intervened and handcuffed appellant to subdue him.

Appellant testified that his actions were only to repel Hoskins' assault on him with a knife. He denied Sugars' testimony and offered a witness to support his claim. The trial court rejected the defense testimony.

Hoskins testified that her skull was fractured which caused swelling, blackouts, and nausea. She said she sustained a sprained or broken ankle, a dislocated shoulder, bruised ribs, torn stomach muscles, and bruised kidneys. Initially, she sought treatment for her injuries at Sentara Bayside Hospital.

On cross-examination, over the Commonwealth's objection, the defense was allowed to ask Hoskins to testify from her Sentara Bayside Hospital records. When asked by the defense why the doctor at Sentara Bayside Hospital saw none of Hoskins' alleged injuries, Hoskins responded that there were three different doctors who saw her, that appellant's counsel was referring to only one doctor's report, and that counsel did not have all of her records.

On redirect, Hoskins testified that she immediately left town after the beating, to live in Kentucky. She stated that because she was experiencing blackouts and dizziness she went to a hospital in Kentucky on May 18 and 26, 1995. Appellant objected to the Kentucky medical records introduced by the Commonwealth because they were photocopies, not originals or

certified copies, and because the records had been in the possession of Hoskins and may have been altered. The trial court admitted the copies of the Kentucky records. Appellant contends that the trial court abused its discretion in admitting those records and that their admission was not harmless. We have reviewed the Kentucky records and find that the vast majority of information purportedly contained therein is illegible. Accordingly, we cannot assign any reasonable evidentiary value to the documents. For that reason, assuming without deciding that those documents were improperly admitted, such error was harmless beyond a reasonable doubt.

Appellant further contends that the evidence was insufficient to support the convictions. We disagree. Viewed in the light most favorable to the Commonwealth, the evidence clearly supports the trial court's finding that appellant intentionally assaulted and battered Hoskins and the baby. See Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974). The fact finder could reasonably infer from the evidence that appellant maliciously intended the natural consequences of his act. Kelly v. Commonwealth, 8 Va. App. 359, 373-75, 382 S.E.2d 270, 278-79 (1989).

Accordingly, the judgment of the trial court is affirmed.

Affirmed.