COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, O'Brien and Raphael


EFREM DANTEL HOLMES, JR., SOMETIMES KNOWN AS
  EFREM DANTEEL HOLMES

v.      Record No. 0097-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MARCH 19, 2024


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Anne F. Reed, Judge

(Brett P. Blobaum, Senior Appellate Attorney; Virginia Indigent
Defense Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Rosemary V. Bourne, Senior
Assistant Attorney General, on brief), for appellee.


Efrem Dantel Holmes, Jr., appeals his convictions for strangulation, assault and battery, and domestic assault and battery. Finding no error, we affirm the judgment and unanimously hold that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[1]

In 2021, Holmes cohabitated with K.C. and the couple's three-year-old son, J.H.[2] K.C.'s two daughters, S.C. (age 13) and A.C. (age 16), also lived in the house. So did two of K.C.'s grandchildren. K.C. is 4 feet 11 inches tall. Holmes stands 5 feet 11 inches tall and weighs 218

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

[1] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[2] We use the initials of the victims and the minor children to protect their privacy.

pounds. The nine convictions at issue—eight misdemeanors and one felony—stem from four incidents over five months, in 2021, during which Holmes violently assaulted K.C. and, in two instances, A.C.

### A. *The four incidents*

*The February attack on K.C.*

Two of Holmes's convictions (CR21000485-00 and -04) involve attacks on K.C. on February 16, 2021. After 10:30 p.m., having returned home from a night of drinking, Holmes wanted to take three-year-old J.H. to a friend's house. When K.C. refused to let him leave with the toddler, Holmes became enraged. He said, "Bitch, you don't tell me what to do with my son. That is my child." Holmes lifted K.C. up by her throat and began choking her on the sofa. She briefly broke free and tried to run out through the kitchen door, but Holmes caught her, pinned her to the kitchen floor, and started choking her again. K.C. testified that their toddler looked on from the living room sofa as Holmes tightened his grip around her throat.

Unable to breathe, K.C. passed out. When she regained consciousness, Holmes was on top of her, "smacking" her in the face and saying, "Bitch, get up, stop being stupid before you lose everything." K.C. told Holmes she planned to leave him. But Holmes said, "you're not going anywhere." He handed over J.H. and went into another room.

K.C.'s 13-year-old daughter, S.C., witnessed a portion of the assault. But she returned to the bedroom she shared with A.C., not knowing "what to do."

After the attack, K.C. looked for another place to live with her three children and two grandchildren. But she could not find any other accommodations.

The jury found Holmes guilty of assault and battery on a family member (K.C.). Although Holmes was also charged with strangling K.C., the jury convicted him of the lesser-included offense of assault and battery.[3]

*The March attack on K.C. and A.C.*

Four of Holmes's convictions (CR21000485-01, -02, -05, -06) arose from events on March 2, 2021. What started as a quarrel between them resulted in Holmes's beating and choking K.C. in their bedroom. K.C. crawled to the hallway as Holmes continued to assault her. Responding to the commotion, A.C. yelled at Holmes to "get off her mom." Holmes turned around and put "his arm around [A.C.'s] neck," choking her. A.C. "couldn't breathe" and felt "like [her] windpipe was [being] crushed." After K.C. pleaded with Holmes to stop, Holmes then shoved K.C. and walked outside.

The jury found Holmes guilty of strangling A.C. (a felony), but on the strangulation charge as to K.C., the jury found Holmes guilty only of the lesser-included offense of assault and battery. In addition, the jury found Holmes guilty of two counts of assault and battery on a family member, one for K.C. and the other for A.C.

*The April attack on K.C.*

Holmes's April 4, 2021 attack on K.C. resulted in his convictions for assault and battery (CR21000485-03) and assault and battery on a family member (CR21000485-07). After a heated argument with Holmes, K.C. took the car keys to drive the five children somewhere to get something to eat. As K.C. got into the driver's seat, Holmes got on top of her and started "punching and choking [her] in front of all five kids." He hit her in the face and grabbed her around the throat.

---

[3] The jury was instructed that if it found that the Commonwealth failed to prove strangulation but found "beyond a reasonable doubt: (1) [t]hat the defendant willfully touched [K.C.]; and (2) [t]hat the touching was done without legal excuse or justification; and (3) [t]hat the touching was done in an angry, rude, insulting, or vengeful manner; then you shall find the defendant guilty of assault and battery."

S.C. lunged at Holmes from the third-row seat, yelling at him, "Get off my mom." Holmes then got out and tried to "grab for" S.C. through the open, driver's-side-passenger door. K.C. put the car in drive and drove forward, the passenger door still open. Holmes chased after them, hurling a cinder block at the car, but he missed.

After that incident, K.C. and her children stayed in hotels for a while, and then with her pastor and his wife. K.C. obtained a protective order against Holmes. During that time, K.C. sent Holmes a text message stating, "[Y]ou have been choking me"; Holmes replied, "I know but [I] never beat [you] up" and "[y]'all are clearly used to it."

*The July attack on K.C.*

The final conviction at issue (CR21000485-08) arose from an incident on July 9, 2021. K.C. had been on vacation in Jamaica when she learned that Holmes had taken J.H. to his house without permission. She immediately flew home to get J.H. back, but Holmes balked, texting her, "Bitch, you gonna feel my pain from taking my son from me." On one video call while J.H. was with Holmes, J.H.'s lip appeared to be "busted." K.C. and her pastor's wife drove to Holmes's residence to see J.H.

K.C. hugged J.H. when she saw him, but Holmes yanked J.H. away from her, exclaiming, "Oh no bitch you are not going to take my son." K.C. retreated to her car and got inside, but Holmes chased after her. He "started pounding [K.C.] in her face" and "chok[ed]" her until she bled. When the pastor's wife called 911 and tried to intervene, Holmes "bit" her on the hand. Still, K.C. and the pastor's wife managed to escape, and soon after, the police arrived and arrested Holmes.

*B. The trial*

K.C., S.C., A.C., the pastor, and the pastor's wife testified to the facts set forth above. The Commonwealth also called Renee Pullen, a forensic nurse, as an expert on strangulation. Over

Holmes's objection, Pullen testified that strangulation is a form of asphyxia that occurs when an "external pressure" on the neck induces pressure in the veins, arteries, or airway "imped[ing] oxygen or blood." The victim can be rendered unconscious from about 4 pounds and 10 seconds of pressure to the "jugular veins" in the neck—or 33 pounds of pressure applied to the "airway." She also testified that although strangulation victims may sustain visible injuries, about half do not.

The court denied Holmes's motion to strike at the close of the Commonwealth's case. Holmes offered no evidence in his case.

During the charging conference, the Commonwealth proposed instructing the jury, among other things, "You may infer that every person intends the natural and probable consequences of his acts." Holmes objected, arguing that the instruction created a "presumption" that would "short circuit[]" the jury's fact-finding function and relieve the Commonwealth of its burden to prove Holmes's intent beyond a reasonable doubt. Holmes asked the trial court either to refuse the instruction or to give his alternative instruction: "You may infer that every person intends the natural and probable consequences of his acts, unless, from all the evidence, you have a reasonable doubt as to whether the consequences that resulted were in fact intended." The court rejected Holmes's instruction and granted the Commonwealth's.

The jury found Holmes guilty of the eight misdemeanor charges and of felony strangulation of A.C.

### C. Sentencing

At sentencing, the court considered the sentencing guidelines and Holmes's criminal record, which included prior convictions for assault and battery and felony-child neglect or abuse. The Commonwealth also introduced victim-impact testimony from K.C and A.C.

In urging a sentence above the guidelines, the prosecutor asserted that strangulation charges typically arise from "domestic violence" incidents, are "notoriously difficult to prosecute," and

often settle because victims fear testifying. Holmes objected that those assertions were not in evidence. The trial court responded, "this is argument, it's not evidence in the case," to which Holmes replied, "Okay."

In imposing a sentence, the trial court found that Holmes did not appreciate the "real impact" of his abuse or show that he had learned anything from his experience. The court determined that an upward sentencing adjustment was warranted by Holmes's criminal history, the gravity of the offenses, "the age of the victim of the strangulation charge," and the significant span during which Holmes repeatedly abused family members. Holmes was sentenced to 12 months' incarceration with none suspended for the February 16 assault and battery on K.C.; 5 years with 2 years suspended for the March 2 strangling of A.C.; 12 months with none suspended for the March 2 assault and battery on a family member (A.C.); and 12 months with 12 months suspended on each of the remaining six misdemeanors. The trial court ordered the first three sentences to run consecutively and the remaining six concurrently.

Holmes noted a timely appeal.

ANALYSIS

A. *Jury Instructions (Assignment of Error I)*

Holmes argues that the Commonwealth's granted jury instruction was an "incomplete and misleading statement of the law" that violated his due process rights. He says that the trial court should have given his instruction instead.

We review a trial court's decision to grant or refuse a jury instruction for abuse of discretion. *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022). But we consider de novo whether an instruction accurately states the law or violates due process. *Watson v. Commonwealth*, 298 Va. 197, 207 (2019); *Lindsey v. Commonwealth*, 293 Va. 1, 5 (2017). "[W]here granted instructions 'fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing

another instruction relating to the same legal principle.'" *Taylor v. Commonwealth*, 77 Va. App. 149, 168-69 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 129 (2014)).

"Mandatory presumptions violate the Due Process Clause because they instruct the jury that it must infer the presumed fact if the State proves certain predicate facts, which relieves the State of the burden of persuasion on an element of an offense." *Lindsey*, 293 Va. at 5-6. But "permissive inference[s]" do not violate due process because they "[do] not relieve the State of its burden . . . to convince the jury that the suggested conclusion should be inferred based on the predicate facts provided." *Id.* at 6 (quoting *Dobson v. Commonwealth*, 260 Va. 71, 75 (2000)).

We held more than 30 years ago that an instruction virtually identical to the one given here did not require the jury to draw any inference and so did not create a mandatory presumption. *Kelly v. Commonwealth*, 8 Va. App. 359, 373 (1989) ("The Court instructs the jury that you may infer that every person intends the natural and probable consequences of his acts."). Our Supreme Court cited *Kelly* when it held in 2001 that "[t]his instruction did not establish an improper presumption but merely stated a permissive inference." *Schmitt v. Commonwealth*, 262 Va. 127, 145 (2001). Since then, our appellate courts have "repeatedly rejected the assertion that the 'natural and probable consequences of his acts' instruction unconstitutionally 'shifts the burden of proof'" to the defendant. *Tizon v. Commonwealth*, 60 Va. App. 1, 21 (2012) (quoting *Thomas v. Commonwealth*, 279 Va. 131, 166 (2010)); *see also Morva v. Commonwealth*, 278 Va. 329, 342-43 (2009) (same); *Velasquez v. Commonwealth*, 276 Va. 326, 330 (2008) ("If the evidence in such a case creates an issue whether the defendant harbored any criminal intent whatsoever, the Commonwealth may request an instruction that it is permissible to infer that every person intends the natural and probable consequences of his or her acts.").

Holmes's proffered instruction would have qualified the Commonwealth's instruction with the statement, "unless, from all the evidence, you have a reasonable doubt as to whether the

consequences that resulted were in fact intended." But that reasonable-doubt concept was already

covered by a separate instruction that

> The defendant is presumed to be innocent. . . . This presumption
> of innocence remains with the defendant throughout the trial and is
> enough to require you to find the defendant not guilty unless and
> until the Commonwealth proves each and every element of the
> crime beyond a reasonable doubt.

Because that instruction fully and fairly covered the presumption of innocence and the

Commonwealth's burden of proof on "every element of the crime," it was unnecessary to append a

variation of that instruction to the permissive-inference instruction. *Accord Kelly*, 8 Va. App. at 374

("The jury was not required to draw any inference and was also properly instructed on the element

of intent and the burden of proof."). So we affirm the trial court's decision to grant the

Commonwealth's instruction.

### B. Expert Testimony (Assignment of Error II)

Holmes next argues that the trial court erred in admitting Pullen's expert testimony about

strangulation. He says that the subject matter was not beyond a lay person's common knowledge

and did not help the jury understand the evidence or determine a fact in dispute. He also argues that

Pullen did not conduct a physical examination of K.C. or A.C.

"In a Virginia criminal proceeding, a qualified expert witness is allowed to testify if 'the

subject matter is beyond the knowledge and experience of ordinary persons, such that the jury needs

expert opinion in order to comprehend the subject matter, form an intelligent opinion, and draw its

conclusions.'" *Smith v. Commonwealth*, 78 Va. App. 371, 389 (2023) (quoting *Castillo v.

Commonwealth*, 70 Va. App. 394, 439 (2019) (quoting Va. R. Evid. 2:702(a)(ii))). "[W]e review 'a

trial court's decision to admit or exclude expert testimony under an abuse of discretion

standard.'" *Id.* (quoting *Arch Ins. Co. v. FVCbank*, 301 Va. 503, 515 (2022)).

We find no abuse of discretion in the trial court's decision to admit Pullen's testimony. The time and pressure to render a person unconscious from strangulation are matters unlikely to be commonly known. That information was useful to the jury in understanding K.C.'s testimony about having passed out from being choked. Pullen's testimony that a visual mark is not left behind in about half of the cases in which a person has been strangled was also a matter beyond common knowledge and was relevant to understanding the strangulation incidents involving K.C. and A.C. *Cf. Petrovics v. Commonwealth*, No. 0393-22-2, slip op. at 12, 2023 Va. App. LEXIS 298, at *17 (May 16, 2023) ("Although [the victim] had no marks on her neck, the forensic nurse whom Petrovics called as a witness testified that even in severe cases it is common for victims to have no apparent signs of strangulation.").[4]

## C. Sentencing (Assignment of Error IV)[5]

Finally, Holmes claims that the trial court erred when it failed to sustain his objection to a portion of the prosecutor's argument at sentencing. Holmes objects to the prosecutor's assertions that strangulation charges typically arise from "domestic violence" incidents, are "notoriously difficult to prosecute," and often are resolved by plea agreement because victims fear testifying. Holmes says that those claims had no evidentiary support. As a remedy, Holmes asks that we vacate the sentence and "remand for a new sentencing hearing."

Holmes defaulted this claim by failing to ask for that relief at the time of the allegedly improper argument. Our Supreme Court "has repeatedly held that errors assigned because of a prosecutor's improper comments . . . during argument will not be considered on appeal unless the accused timely moves for a cautionary instruction or for a mistrial." *Martinez v. Commonwealth*,

---

[4] Although our unpublished opinion in *Petrovics* does not constitute "binding authority," we cite it as "informative." Rule 5A:1(f).

[5] Holmes withdrew his third assignment of error.

241 Va. 557, 559 n.2 (1991) (citing *Cheng v. Commonwealth*, 240 Va. 26, 38-39 (1990) (collecting cases)). It is not enough to object during the prosecutor's argument. The accused must "articulate . . . clearly the action he desire[s] the court to take." *Harvey v. Commonwealth*, 76 Va. App. 436, 458 (2023) (quoting *Maxwell v. Commonwealth*, 287 Va. 258, 269 (2014)). For instance, "[i]f defense counsel 'believes that an argument requires or justifies a mistrial, he has the duty to [make a mistrial motion] promptly before the conclusion of the argument.'" *Id.* (second alteration in original) (quoting *Bennett v. Commonwealth*, 29 Va. App. 261, 281 (1999)).

Here, Holmes failed to properly object in the trial court, let alone request a new sentencing hearing before the conclusion of the prosecutor's argument. When Holmes objected that the prosecutor's statements about strangulation were not in evidence, the trial court appeared to agree with him, noting "this is argument, it's not evidence in the case." Holmes acquiesced in that apparent agreement, responding "Okay."[6] And in any event, Holmes failed to move for a new sentencing hearing or to request any other remedy. So this argument is forfeited.

CONCLUSION

We find no basis to set aside Holmes's convictions.

*Affirmed.*

---

[6] Indeed, nothing in the record suggests that the trial court departed from the sentencing guidelines on account of the argument to which Holmes objected. Rather, the trial court found that "the seriousness of the case," A.C.'s youth, Holmes's "criminal history," and "the span of time" during which Holmes repeatedly attacked the victims justified a sentence above the range of the sentencing guidelines. The court also found that Holmes's failure to appreciate the "real impact" of his misconduct supported an upward departure.