Leonard J. HAWKINS, Petitioner,

v.

Edward W. MURRAY, Director,
Respondent.

Civ. A. No. 91–0406–AM.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 23, 1992.

Leonard J. Hawkins, pro se.

Richard B. Smith, Office of Atty. Gen., Richmond, Va., for Edward W. Murray.

## MEMORANDUM OPINION

ELLIS, District Judge.

This habeas corpus action is before the Court on respondent's motion for summary judgment. At issue is whether *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and its progeny foreclose federal *de novo* review of petitioner's claim that his guilty pleas should be vacated because he received constitutionally ineffective assistance of counsel in the proceeding leading up to his pleas. For the reasons that follow, the Court concludes that *Teague* does not bar federal habeas review of petitioner's ineffective assistance claim, but that summary judgment is nonetheless appropriate given petitioner's failure to demonstrate the requisite prejudice stemming from his counsel's alleged ineffectiveness.

### I.

On June 15, 1987, a state Grand Jury indicted petitioner on three counts of robbery, in violation of Virginia Code Ann. § 18.2–58, and three counts of displaying a firearm during the commission of a robbery, in violation of Virginia Code Ann. § 18.2–53.1. On the advice of his appointed counsel, petitioner accepted a plea agreement in which the Commonwealth's Attorney for Fairfax County agreed not to pursue fifteen additional robbery and fifteen additional firearm charges in exchange for his guilty plea to the six charges contained in the indictments. On June 22, 1987, the Circuit Court for Fairfax County accepted petitioner's guilty plea and convicted him on the six counts. That court, on August 21, 1987, sentenced petitioner to serve three concurrent twenty-five (25) year sentences for the robbery counts and two (2) years for each firearm count, for a total sentence of thirty-one (31) years. Unbeknownst to petitioner at the time (and apparently to his then counsel, as well), Virginia Code Ann. § 53.1–151(B)(1) rendered him ineligible for parole. Specifically, that Code section denied parole eligibility to persons, like petitioner, convicted of three separate robbery offenses involving firearms where such offenses are not part of "a common act, transaction or scheme."[1]

Almost three years later it appears petitioner learned of the Virginia statute. At that time, on February 23, 1990, through different counsel, he moved the Fairfax Circuit Court for a *nunc pro tunc* order declaring that his 1987 robbery convictions were part of "a common act, transaction or scheme." The motion was denied. Had the Circuit Court granted the motion, petitioner might now possibly be eligible for parole.

Thereafter, petitioner's writ of habeas corpus, filed with the Supreme Court of Virginia, was summarily denied on November 15, 1990.[2] No findings of fact or conclusions of law appeared in the Supreme Court's order denying the petition.

Following this, Hawkins filed a petition in this Court substantially reasserting the ineffective assistance of counsel claim he made to the Supreme Court of Virginia.

---

1. The statute states:

    Any person convicted of three separate felony offenses of (i) murder, (ii) rape or (iii) robbery by the presenting of firearms or other deadly weapon, or any combination of the offenses specified in subdivisions (i), (ii) or (iii) when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole.

    Virginia Code Ann. § 53.1–151(B1).

2. Petitioner had previously filed the same petition with the Circuit Court but withdrew the petition from that court and filed it in the Supreme Court of Virginia.

Specifically, he claims his trial counsel at the time of his pleas failed to inform him that his pleas to three robberies would result, by virtue of Virginia Code Ann. § 53.1–151(B1), in his ineligibility for parole. Petitioner asserts that had counsel informed him of this fact, he would not have pled guilty and instead, would have insisted on going to trial. It follows, according to petitioner, that his pleas were involuntary and hence invalid. Respondent sought threshold dismissal, arguing that there is no requirement that a defendant be informed about parole eligibility before pleading guilty. In a Memorandum Opinion dated April 14, 1992, the Court denied respondent's motion to dismiss.[3] Upon finding that trial counsel did not discuss the implications of § 53.1–151(B1) with petitioner, the Court analyzed the claim under the two-part *Strickland* test as applied to guilty pleas through *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The Court concluded that counsel's failure to inform petitioner that he would be ineligible for parole falls below an objective standard of reasonableness. Finding a dispute of material facts concerning the prejudice component of *Strickland,* the Court ordered an evidentiary hearing on the issue. Respondent subsequently filed the instant motion for summary judgment, arguing that *Teague* forecloses petitioner's claim.

## II.

Federal courts have long struggled with the problem of retroactivity in the habeas context. The problem arises when, on habeas review, new or evolving constitutional rules are claimed to apply to cases decided prior to the development of the new rule. When this occurs, the principles of finality and justice compete for vindication. Finality is an important value in a criminal justice system; at some point, there must be a fair end to the process. At the same time, the process must be just and must be seen to be just by minimizing the risk that the innocent will be convicted. It is the tension between these competing goals that has challenged courts on this issue. Not surprisingly, courts have struck different balances over time. *Teague,* the latest effort in the series, has revolutionized retroactivity in the habeas context. Given this and given *Teague's* centrality to the case at bar, it is worth sketching briefly the somewhat tortuous history of habeas retroactivity law.

Panoramic views of habeas retroactivity law properly begin with *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Prior to *Brown* the scope of the writ was limited. New rules were not cognizable on habeas absent unusual circumstances. *See Mackey v. United* States, 401 U.S. 667, 684, 91 S.Ct. 1160, 1176, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring) (discussing history of habeas retroactivity law). *Brown* greatly expanded the scope of the writ by holding that Congress intended the habeas statute to result in federal *de novo* review of state prisoner's federal constitutional claims. Under *Brown,* federal courts were to have the "final say" on federal constitutional matters. *See Brown,* 344 U.S. at 508, 73 S.Ct. at 446–47 (Frankfurter, J., concurring). Ten years later, the Warren court confirmed this view, noting that the habeas statute reflects a "clear congressional policy of affording a federal forum for the determination of federal claims of state criminal defendants." *Fay v. Noia,* 372 U.S. 391, 418, 83 S.Ct. 822, 837, 9 L.Ed.2d 837 (1963). Consistent with this expansive view of the habeas remedy, the Supreme Court concluded that the decision whether to apply a new rule retroactively required weighing "the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation". *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 1738, 14 L.Ed.2d 601 (1965).[4]

---

**3.** As matters beyond the pleadings were considered, the motion to dismiss was treated as a motion for summary judgment. *See* Rule 12(b), Fed.R.Civ.P.

**4.** While *Linkletter* involved direct review and suggested that collateral review might be different, subsequent decisions made clear that the *Linkletter* retroactivity formula also applied on

The Warren court's expansive view of the habeas remedy provoked thoughtful critical comment,[5] which, in time, was followed by a gradual, progressive judicial narrowing of the habeas remedy.[6] Of the various recent narrowing landmarks, perhaps the most significant is *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). There, the Supreme Court held that with two exceptions,[7] a new rule will not be retroactively applied to void a conviction that was final when the new rule was announced. *Id.* at 301, 109 S.Ct. at 1070. The sensible purpose of the *Teague* doctrine, in the Supreme Court's view, is to prohibit "the continuing reexamination of final judgments based upon later emerg-

---

collateral review. *See, e.g., Stovall v. Denno,* 388 U.S. 293, 300, 87 S.Ct. 1967, 1971, 18 L.Ed.2d 1199 (1967); *Johnson v. New Jersey,* 384 U.S. 719, 732, 86 S.Ct. 1772, 1780, 16 L.Ed.2d 882 (1966).

5. The most influential of these were law review articles by Professor Bator and Judge Friendly. *See* Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harv. L.Rev. 441 (1963); Friendly, *Is Innocence Relevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142 (1970). Professor Bator in his article undertook a careful historical and functional analysis of the habeas remedy, concluding ultimately that neither history nor sensible policy supported *Brown's* broad habeas jurisdiction allowing liberal relitigation of all federal constitutional questions decided in state court. Bator argues that collateral review of state decisions should be limited to assuring the adequacy of state process. Crucial to Bator's analysis and conclusion is that absolute truth is ultimately unknowable and hence that it is a "fundamental epistemological error" to believe that court determinations can be verifiably true or correct in some ultimate sense. Bator, *supra,* at 446–50. Thus, in Bator's view, the point at which an adjudication should be final cannot be defined by reference to when in the course of litigation and relitigation truth would be discovered; instead, finality would be more appropriately defined by "functional, institutional and political considerations." *Id.* at 449. Judge Friendly's fundamentally different view focuses chiefly on the potential for habeas review to correct state errors bearing on factual guilt or innocence. Friendly, *supra,* at 152–54. In his view, with certain specific exceptions, only the potential for ferreting out genuine claims of innocence should determine the scope of habeas. *Id.* On the issue of retroactivity, Judge Friendly concludes that habeas review should encompass new constitutional developments the Supreme Court has held should have retroactive application. *Id.* at 154.

6. Among the many decisions that reflect this narrowing trend are: (1) *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (where state provides full and fair opportunity for litigating a Fourth Amendment claim, the Constitution does not require federal habeas relief on the claim that illegally obtained evidence was used at trial); (2) *Id.* at 493, 96 S.Ct. at 3052 (Habeas relief, according to Justice Pow-

ell, causes some disruption to the federal system, which balanced against the utility of the non-constitutional exclusionary rule means that the rule should be applied at the trial and appellate stages, but not on habeas review); (3) *Wainright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (constitutional claims procedurally barred in state court are not reviewable on habeas in federal court unless claimant can show cause for default and actual prejudice as a result); (4) *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (state court's factual determinations on the merits are presumed correct); (5) *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (where habeas petition contains exhausted and non-exhausted claims, district court must dismiss entire petition); and (6) *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (where petitioner fails to comply with state procedural rule, which failure provides adequate and independent grounds for state's denial of relief, federal review will also be barred where state court has expressly relied on procedural default, absent showing of cause and prejudice, or actual innocence).

An important rationale for this narrowing trend has been the notion, urged by Professor Bator, that adequacy of the state process, not illusory correctness of result, should be the focus of habeas review. *See supra* note 5. Worth noting, however, is that Judge Friendly's view has also been heard. Even as the narrowing trend has continued, courts have been careful not to close the door on correcting unjust results. See *Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (interests in finality and comity must yield in appropriate cases to correcting an unjust incarceration); *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (successive petitions need be entertained only where constitutional procedural claim is supplemented with a colorable showing of innocence in fact).

7. Neither exception applies in this case. The first exception allows retroactive application of a new rule if the rule places certain private conduct beyond the power of the State to proscribe. *Teague,* 489 U.S. at 311, 109 S.Ct. at 1075. The second exception involves rules which create "watershed" rules of criminal procedure. *Id.* The rule petitioner relies on, at best, supplements a watershed rule; it does not create one.

ing legal doctrine." *Sawyer v. Smith,* 497 U.S. 227, ——, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990).

But *Teague* left unclear various practical details concerning the retroactive application of new rules for habeas petitioners. Clarification promptly came in several subsequent decisions, the most recent of which is *Stringer v. Black,* —— U.S. ——, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).[8] *Stringer* establishes a two step process for applying the *Teague* doctrine. First, the district court must determine whether the decision relied on by the petitioner announces a new rule. *Id.* at ——, 112 S.Ct. at 1135. A decision establishes a new rule "when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070. If the habeas decision requires the application of a new rule, then the district court must decide whether either of the two *Teague* exceptions applies.[9] Second, "[i]f, however, the decision did not announce a new rule, it is necessary to inquire whether granting the relief sought would *create* a new rule because the prior decision is applied in a novel setting, thereby extending the precedent." *Id.* (citing *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990)) (emphasis added). Under the second step, a decision "creates" a new rule "if the [habeas] result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis in original). And a result is not dictated if it is "susceptible to debate among reasonable minds." *Butler v. McKellar,* 494 U.S. at 415, 110 S.Ct. at 1217. Through this formulation, the Supreme Court sought to "validate reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions."[10] *Id.*

### III.

■ The *Teague–Stringer* principles applied to the case at bar lead inescapably to the conclusion that the result sought by petitioner in this case involves neither a "new rule", nor the "creation" of a new rule. No "new rule" is involved for, as respondent concedes, petitioner is not relying on any decision announced after his conviction became final. Less clear is whether the result petitioner seeks requires "creation" of a new rule.

It was well-settled by the time of petitioner's plea that the validity of a guilty plea is determined by "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Moreover,

---

**8.** *See also Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Sawyer v. Smith,* 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193, *reh'g denied,* —— U.S. ——, 111 S.Ct. 17, 111 L.Ed.2d 830 (1990).

**9.** *See supra* note 7.

**10.** Respondent argues that this second, more general component of *Teague* establishes a new standard of federal habeas review foreclosing *de novo* review of most state court decisions. In *West v. Wright,* 931 F.2d 262 (4th Cir.1991), *rev'd on other grounds,* —— U.S. ——, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992), the Fourth Circuit rejected the notion that the *Teague* line of decisions created a new, more restrictive standard of review. The petitioner in *West* contended that the evidence adduced at his trial was not sufficient to support the finding of guilt beyond a reasonable doubt. There, as here, the Virginia Attorney General argued, that the *Teague* doctrine mandates a deferential review for reasonableness of state court determinations of mixed questions of law and fact. In applying the constitutional standard for assessing the sufficiency of evidence, the Fourth Circuit stated, "[o]bviously, a federal habeas court cannot be said to apply a 'new constitutional rule' whenever it applies the *Jackson v. Virginia* test to a 'new' set of facts in evidence." *Id.* at 266. The Fourth Circuit, accordingly, reviewed petitioner's claims *de novo* under the test in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and found that the evidence was insufficient to support the conviction. The Supreme Court reversed, finding that the evidence was sufficient, but at the same time, declined to rule on whether *Teague* and its progeny created a new standard of federal habeas review. *Wright v. West,* —— U.S. ——, ——, 112 S.Ct. 2482, 2490, 120 L.Ed.2d 225 (1992).

where a defendant enters a plea on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). Announced prior to petitioner's plea, *Hill* adopted the two-part *Strickland v. Washington* test for assessing challenges to guilty pleas based on ineffective assistance of counsel. *See Hill*, 474 U.S. at 58, 106 S.Ct. at 370. Under that test, an attorney's representation is ineffective if it falls below an objective standard of reasonableness. *Id.* at 57, 106 S.Ct. at 369. Thus, the question presented here is whether the failure of the attorney to advise petitioner of his (petitioner's) statutory ineligibility for parole prior to the entry of the plea falls below an objective standard of reasonableness.

■ The search for an answer to this question properly begins with a review of the pertinent authority in existence at the time petitioner's conviction became final. In general, it was settled then, as now, that failure to advise on the effects of parole does not render the representation constitutionally ineffective. *See Strader v. Garrison* 611 F.2d 61, 63 (4th Cir.1979). But significantly, courts have drawn a sharp distinction between such failures and the failure to advise a defendant that he or she is *absolutely* ineligible for parole. Thus, decisions published prior to petitioner's conviction hold that absolute parole ineligibility must be communicated to a defendant before a plea where, as here, the ineligibility is a direct consequence of the plea. *See Bell v. North Carolina*, 576 F.2d 564 (4th Cir.1978); *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364 (4th Cir.1973); *Paige v. United States*, 443 F.2d 781 (4th Cir.

1971).[11] Nor is there any doubt that this is a sensible result. Consider, for example, the circumstances at bar. Petitioner, prior to his plea, might reasonably have thought that parole would reduce his incarceration exposure to one-third or one-quarter of the sentence imposed. Thus, he might reasonably claim to be unfairly surprised to learn that he must serve thirty years in prison without parole rather than five to ten years followed by parole. The difference in sentences is undeniably material to the plea decision. And it offends traditional notions of fairness to claim that a plea entered under a misapprehension of this dimension is a voluntary plea in the constitutional sense.[12] Equally offensive is the suggestion that a lawyer meets any reasonable standard when he or she fails to advise a defendant that the defendant's plea will result in parole ineligibility and a lengthy period of incarceration. Such a suggestion renders empty and meaningless the Constitution's guarantee of effective legal representation.

Seeking to avoid this conclusion, respondent contends decisions in other circuits point to the contrary. *See Trujillo v. United States*, 377 F.2d 266 (5th Cir.1967); *Johnson v. Dees*, 581 F.2d 1166 (5th Cir. 1978); *Smith v. United States*, 324 F.2d 436 (D.C.Cir.1963), *cert. denied*, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964). This is not so; the cases are neither apposite nor persuasive. *Trujillo* and *Johnson* do not concern the issue of ineffective assistance of counsel pertinent here. Instead, both decisions hold only that *a court* is not required to inform a defendant of his ineligibility for parole. Indeed, *Hill v. Lockhart* also held that the Constitution does not require *a court* to advise a defendant about parole eligibility before entering a plea. 474 U.S. at 56, 106 S.Ct. at 368. As *Hill* reflects, however, there is a signifi-

---

**11.** Decisions issued since that time support this result. *See Hill v. Lockhart*, 894 F.2d 1009 (8th Cir.) (en banc), *cert. denied,* — U.S. —, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990) (erroneous parole advice may constitute ineffective assistance of counsel); *Holmes v. United States*, 876 F.2d 1545 (11th Cir.1989) (evidence that counsel grossly misinformed defendant of parole conse-

quences merits remand to consider prejudice component of *Strickland*); *Sparks v. Sowders*, 852 F.2d 882 (6th Cir.1988) (gross misadvice concerning parole eligibility can amount to ineffective assistance of counsel).

**12.** See decisions cited *supra* note 9.

cant difference between a court's role in accepting a guilty plea and an attorney's role in advising a defendant to enter an informed plea. The court's role is to inquire into the voluntariness of the plea, not to render effective legal assistance to the defendant. The latter is the attorney's duty and its satisfactory performance is largely assumed by the court in its consideration of voluntariness. Were this not so, the court's voluntariness inquiry would necessarily be quite lengthy as the court would have to cover all major legal and tactical areas of advice. Finally, respondent also misapplies the *Smith* decision. Although *Smith* dealt with the issue of ineffective assistance of counsel, the obsolete standard that controlled that case was whether an attorney's conduct "shocked the conscience of the court" before relief could be granted. 324 F.2d at 440. Such a standard is far more stringent than the *Strickland* test applicable here.

■ At the time of petitioner's conviction, only one other circuit had discussed the issue whether the constitutional effective assistance standard requires counsel to inform a defendant of his ineligibility for parole. In *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir.1987), the Fifth Circuit expressed doubt that the Sixth Amendment imposed a general obligation on counsel to inform defendants of the parole consequences of their pleas, but noted that "special factors" could create such a duty. While the special factors were not specified, the court recognized, consistent with Fourth Circuit authority, that the direct consequences of a plea must be known for the plea to be valid. That is this case; parole ineligibility and hence a longer period of incarceration were direct consequences of petitioner's pleas in this case. Thus, analysis of the pertinent authority reflects that the law at the time of petitioner's plea compelled the finding that counsel was ineffective for failing to reveal the fact of petitioner's parole ineligibility prior to his plea. Nor does the ruling of the Supreme Court of Virginia in this case require a different

result. It is indisputably true that federal courts on state habeas review are bound by the principles of finality and comity to uphold the state court's "reasonable, good-faith interpretations" of the precedent. *Butler v. McKellar*, 494 U.S. at 415, 110 S.Ct. at 1217. Yet that principle has little, if any force here for in dismissing the petition without argument, that court issued a summary dismissal order containing no findings of fact or conclusions of law. Where, as here, the state court provides no basis for its dismissal of the petition, there is simply no way to assess whether that court's interpretation of precedent was reasonable. Under these circumstances, *de novo* review by this court is required. Moreover, even assuming the state court entered a detailed order of dismissal, "a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)." *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel is a mixed question of law and fact that is subject to *de novo* federal review. *Id.* In sum, then, it seems clear that petitioner has succeeded in showing that he received constitutionally ineffective assistance of counsel when his counsel failed to advise him that parole ineligibility would be a direct consequence of his plea.

■ This conclusion, while a necessary predicate for relief, does not end the analysis. To prevail, petitioner must show more than ineffective assistance of counsel; he also bears the burden of establishing that he was prejudiced by counsel's unprofessional errors. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. In the plea context, this means petitioner must demonstrate that there is a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted instead on going to trial. *See Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. at 370–71; *Fields v. Taylor*, 956 F.2d 1290, 1297 (4th Cir. 1992).[13]

---

13. Finality of a judgement is a principle concern in *Teague,* for "[w]ithout finality, the crimi-

nal law is deprived of much of its deterrent effect." 489 U.S. at 309, 109 S.Ct. at 1074. In

■ In this case, petitioner asserts just that: he claims that had he been informed his plea rendered him ineligible for parole, he would not have pled guilty [14] but instead would have insisted on his right to trial. Respondent counters that petitioner's self-serving statement to this effect, made several years after the fact is insufficient to demonstrate prejudice. Respondent further asserts that petitioner had little choice but to plead guilty because he otherwise would have faced prosecution on thirty additional felonies.

Viewed subjectively, the issue of prejudice might be seen to be hotly disputed. But such a dispute would not be material as it is settled that the prejudice question must be answered through an objective analysis. *See Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir.1988). And such an analysis may be performed here on summary judgment because the pertinent objective facts are not disputed. Petitioner accepted a plea agreement in which he pled guilty to six felonies—three robberies and three firearm violations—in exchange for the state's agreement not to pursue thirty additional felonies, including fifteen robberies and fifteen firearms charges. Importantly, the avoidance of thirty additional serious felony charges is objectively a substantial, if not irresistible incentive to enter a plea in this case, even in the face of parole ineligibility. Also important is an assessment of whether a reasonable petitioner would have elected to go to trial given the strength of the government's incriminating evidence. Here, the strength and quality of such evidence point compellingly to the conclusion that a reasonable defendant would have pled guilty and waived trial even if he had been told that the plea would render him ineligible for parole. Specifically, this powerful incriminating evidence included positive identifications of petitioner by various robbery victims from photographic lineups. Significantly, petitioner had also confessed voluntarily to the police that he had committed the charged felonies, as well as the thirty additional felonies.[15] In short, the case against petitioner was quite strong, if not insurmountable. It may be that if petitioner had known that his plea would result in parole ineligibility, he might have sought to negotiate a more advantageous plea agreement. But this is too speculative to be relevant to the required objective analysis. Instead, the issue is simply whether a reasonable defendant would have insisted on going to trial in these circumstances. Given the overwhelming evidence against petitioner, it is objectively unreasonable to infer that he would have rejected the plea agreement, which conferred a significant benefit on him, and risked instead facing certain prosecution and likely conviction on thirty additional felony charges. Indeed, petitioner admitted in his pleadings before this Court that he accepted the plea agreement out of fear of receiving a lengthy sentence on the other charges. As petitioner cannot objectively demonstrate that he was prejudiced by counsel's constitutionally ineffective assistance, this action must be dismissed. The Court, accordingly, VACATES its order setting this action for an evidentiary hearing and GRANTS respondent's motion for summary judgment.

---

assessing ineffective assistance of counsel claims, the interest in finality is served by the prejudice component of the *Strickland* test. 466 U.S. at 693, 104 S.Ct. at 206.

**14.** Indeed, petitioner claims he was shocked and dismayed to learn of his parole ineligibility from his subsequent attorney.

**15.** The record discloses no reason to believe that there is any valid basis to suppress these confessions.