Buddy **HERNANDEZ**, Petitioner,

v.

**SUPERINTENDENT, FREDERICKS-BURG–RAPPAHANNOCK JOINT SE-CURITY CENTER, Respondent.**

**Civ. A. No. 92–0189–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 26, 1992.

Victor Michael Glasberg, Victor M. Glasberg & Assc., Alexandria, Va., for petitioner.

Richard B. Smith, Office of the Atty. Gen., Richmond, Va., for respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

This § 2254 action challenges a state court conviction for violation of a statute proscribing mask-wearing that conceals the wearer's identity. In essence, petitioner, a Ku Klux Klan ("Klan") member, was arrested while distributing Klan propaganda in full klan regalia, including a mask. He was subsequently convicted of violating Virginia Code § 18.2–422, which prohibits wearing a mask covering the face so as to conceal the identity of the wearer.

Petitioner asserts three grounds for relief. First, he claims the Virginia statute, as applied to him, violates his free speech rights guaranteed by the First and Fourteenth Amendments. Second, he contends that the Virginia Court of Appeals denied him Due Process because it improperly found as a matter of fact that he wore a mask to conceal his identity. And finally, petitioner claims the trial judge impermissibly imposed an unduly harsh sentence to punish petitioner for his Klan beliefs.

Respondent has filed a motion to dismiss. As a threshold matter, respondent argues that *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny foreclose federal *de novo* review of petitioner's claims and that this Court must defer to the state court's adjudication of the constitutional issues. Beyond this, respondent argues that even assuming, *arguendo,* the availability of federal habeas review, petitioner's claims are meritless. In the course of oral argument on respondent's motion to dismiss, the parties agreed to submit the matter to the court on the existing record. Given this stipulation and given the absence of any material factual disputes, this matter is now ripe for summary disposition.

## I.

In August 1989, petitioner was arrested on a felony charge of wearing a mask in public, in violation of Virginia Code § 18.2–422.[1] On the day of his arrest, petitioner was in Fredericksburg, Virginia, with two other persons for the purpose of distributing Klan literature. He was dressed in full Klan regalia, including a robe outfitted with a hood and a mask covering his face. The second member of the group, a woman, also wore the Klan robes, but wore no hood or mask. The third member of the group was attired in casual street clothes and wore no mask or Klan costume. A police officer dispatched to the scene found petitioner and his companions handing out Klan material on a sidewalk in the downtown business section of Fredericksburg. The officer approached the group and informed petitioner that he was under arrest for wearing a mask in public. Petitioner then removed his mask and handed it to the woman in the group. Arrested solely on the mask-wearing charge, petitioner was peaceful and cooperative throughout his arrest. The officer did not arrest petitioner's companions, but admonished them not to block traffic by standing in the roadway.

On September 22, 1989, petitioner, by counsel, moved for dismissal of the mask-wearing charge during the preliminary hearing held in the General District Court for the City of Fredericksburg. Petitioner argued that the statute was unconstitutional on its face and as applied to him because it violated the Free Speech Clause of the First Amendment. That court declined to rule on the constitutionality of the statute and found probable cause to certify the charge to the grand jury. The grand jury returned an indictment against petitioner charging him with violating Virginia Code § 18.2–422. Petitioner subsequently filed a pre-trial motion to suppress the indictment. In a hearing before the Circuit Court for the City of Fredericksburg[2], petitioner argued that his wearing of a mask, in this instance a mask attached by snap-fasteners to the traditional Klan hood, constituted an expression of symbolic speech, and therefore any attempt to suppress that symbolic speech violated his First Amendment right of expression. The Circuit Court disagreed, finding that the act of wearing a mask "is not communicative and articulates no specific idea," and was therefore not entitled to constitutional protection. Recognizing that § 18.2–422 was enacted to curb Klan activities, the Circuit Court further found that even if the wearing of a mask were symbolic speech, the statute's specific provisions had only a minimal impact on the right of free expression and served a compelling government interest in protecting the "political and social privileges" of its citizens.

Petitioner's bench trial was held in the Circuit Court of the City of Fredericksburg. At trial, petitioner's counsel stipulated that petitioner was wearing the mask in violation of the statute. Counsel asserted that petitioner's only defense was a "constitutional" one. Petitioner testified on his own behalf. Under cross-examination he stated he was a Klan member dis-

1. Virginia Code § 18.2–422 provides as follows:
   It shall be unlawful for any person over sixteen years of age while wearing any mask, hood or other device whereby a substantial portion of the face is hidden or covered so as to conceal the identity of the wearer, to be or appear in any public place, or upon any private property in this Commonwealth without first having obtained from the owner or tenant thereof consent to do so in writing. However, the provisions of this section shall not apply to persons (i) wearing traditional holiday costumes; (ii) engaged in professions, trades, employment or other activities and wearing protective masks which are deemed necessary for the physical safety of the wearer or other persons; (iii) engaged in any bona fide theatrical production or masquerade ball; or (iv) wearing a mask, hood or other device for bona fide medical reasons upon the advice of a licensed physician or osteopath and carrying on his person an affidavit from the physician or osteopath specifying the medical necessity for wearing the device and the date on which the wearing of the device will no longer be necessary and providing a brief description of the device. The violation of any provisions of this section shall constitute a Class 6 felony.

2. Circuit courts are Virginia's general jurisdiction trial courts of record. General district courts are limited jurisdiction courts not of record.

tributing Klan literature when arrested. He asserted he was wearing the Klan costume, including the face-covering mask, because in his words, "[i]t's part of the symbolic symbol of the Klan, you know, part of the costume." When asked why he had covered his face while his robed companion had not, petitioner responded that he believed in "full costume."

The "Grand Dragon" of the Virginia Klan, Roger Kelly, also testified for petitioner. Kelly stated that the hood was one of the symbols of the Klan. He related that when a Klan costume is ordered from the commercial manufacturer, the mask is automatically included with the hood. On cross-examination, Kelly described the mask as connected to the hood by three snaps so that it is detachable. Kelly conceded that the mask was an optional part of the Klan costume.

The trial judge rejected petitioner's constitutional defense. Based on the evidence that the mask was detachable and an optional part of the costume, the judge found that the mask was not part of the Klan's symbolic speech. Accordingly, the trial judge found petitioner guilty of the charge. At sentencing, the trial judge imposed on petitioner a 30–day jail sentence, suspended on the condition of five years' good behavior, and a fine of $1,000. Petitioner appealed his conviction to the Court of Appeals of Virginia. On appeal, petitioner asserted that § 18.2–422 was unconstitutional on its face, that it was unconstitutional as applied to him, and that the trial judge impermissibly punished him for his Klan beliefs. After briefing and oral argument, the Court of Appeals rejected petitioner's contentions and affirmed the conviction and sentence. *Hernandez v. Commonwealth,* 12 Va.App. 669, 406 S.E.2d 398 (1991). Petitioner then filed a petition for appeal to the Supreme Court of Virginia. On September 25, 1991, that court denied the petition. Thereafter petitioner filed the instant § 2254 action, in which he asserts his conviction was uncon-

stitutional and should be set aside for the following reasons:

(1) Virginia's mask-wearing prohibition violates the First and Fourteenth Amendments guarantees of freedom of speech, due process, and equal protection as applied to petitioner;

(2) the Virginia Court of Appeals violated petitioner's Fourteenth Amendment right to due process by finding, at the appellate level, that petitioner, who was presumed to intend the ordinary and natural consequences of his acts, had worn the mask to conceal his identify; and

(3) the unduly harsh sentence was imposed in retribution for petitioner's espousal of Klan beliefs, in violation of his First and Fourteenth Amendment rights.

## II.

The threshold issue is whether, as respondent argues, *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), bars this Court review of the petition. Distilled to its essence, *Teague* holds that with two exceptions not applicable here,[3] a new rule will not be retroactively applied to void a conviction that was final when the new rule was announced. Post–*Teague* decisions have clarified various practical details concerning the retroactive application of new rules in habeas cases. These decisions are summarized in this Court's opinion in *Hawkins v. Murray,* 798 F.Supp. 330 (E.D.Va.1992).

[*Stringer v. Block,* —— U.S. ——, 112 S.Ct. 1130 [117 L.Ed.2d 367] (1992)] established a two step process for applying the *Teague* doctrine. First, the district court must determine whether the decision relied on by the petitioner announces a new rule. *Id.* [—— U.S. at ——] at 1135. A decision establishes a new rule "when it breaks new ground or imposes a new obligation on the States or the

---

**3.** The first exception allows retroactive application of a new rule if the rule puts certain private conduct beyond the reach of State proscription. *See Teague,* 489 U.S. at 311, 109 S.Ct. at 1075–76. The second exception involves so-called "water-

shed" rules of criminal procedure. *See Id.* The dispositive rules here are neither "watershed" procedural rules nor rules that render certain private conduct immune from State proscription.

Federal Government." *Teague*, 489 U.S. at 301 [109 S.Ct. at 1070.] If the habeas decision requires the application of a new rule, then the district court must decide whether either of the two *Teague* exceptions applies. Second, "[i]f, however, the decision did not announce a new rule, it is necessary to inquire whether granting the relief sought would *create* a new rule because the prior decision is applied in a novel setting, thereby extending the precedent." *Id.* (citing *Butler v. McKellar*, 494 U.S. 407 [110 S.Ct. 1212, 108 L.Ed.2d 347] (1990)) (emphasis added). Under the second step, a decision "creates" a new rule "if the [habeas] result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 [109 S.Ct. at 1070] (emphasis in original). And a result is not dictated if it is "susceptible to debate among reasonable minds." *Butler v. McKellar*, 494 U.S. at 415 [110 S.Ct. at 1217–18]. Through this formulation, the Supreme Court sought to "validate reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to late decisions." *Id.*

In sum, federal courts on habeas review cannot overturn state court convictions on the basis of rules announced since the date of the conviction or on the basis of rules not dictated by controlling precedent in effect at the time the conviction became final.[4]

■ Applied here the *Teague–Stringer* principles point persuasively, if not conclusively, to the conclusion that the disposition of the issues at bar involves neither a "new rule," nor "the creation" of a new rule. No "new rule" is involved as neither petitioner nor respondent relies on any decision announced after petitioner's conviction became final. Similarly, disposition of petitioner's claims "creates" no new rule; rather, the result here is compelled by precedent existing at the time petitioner's conviction became final.

### III.

The Virginia anti-mask statute in issue here is of a genre not uncommon in this country. At least a dozen states have enacted such laws. They typically fall into one of two categories. The first category consists of statutes that prohibit public mask wearing where the wearer's identity is concealed with the intent to interfere with the civil rights of another.[5] Laws that fall into the second category, of which § 18.2–422 is an example, prohibit public mask wearing that conceals the identity of the wearer, but provide for certain specific exceptions.[6] Commentators have traced the origin of both categories of laws to efforts to combat the Klan's illegal, violent activities.[7] Because the reach of these

---

**4.** It is difficult not to see a progressive narrowing of the scope of habeas review from *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), to *Teague*. *See Hawkins v. Murray*, 798 F.Supp. 330 (E.D.Va.1992). Yet, the Fourth Circuit in *West v. Wright*, 931 F.2d 262 (1991), *rev'd on other grounds,* —— U.S. ——, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992), rejected the motion that *Teague* and its progeny created a new and more restrictive habeas review standard. The Supreme Court reversed on other grounds, but declined to say whether *Teague* and its offspring created a new standard of habeas review. *Wright,* —— U.S. at ——, 112 S.Ct. at 2492 (citing the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), test, the Supreme Court reversed the Fourth Circuit's conclusion that the evidence was insufficient to support the conviction.)

**5.** *See, e.g.,* N.M.Stat.Ann. § 30–22–3 (1984); Conn.Gen.Stat. § 53–37a (1989); Del.Code Ann. tit. 11, § 1301(1)(g) (1987).

**6.** *See, e.g.* Ga.Code Ann. § 16–11–38(a) (1988); Ala.Code § 13A–11–9(a)(4) (1982); Fla.Stat. §§ 876.12, 876.13 (1987); La.Rev.Stat.Ann. § 14:313 (West 1986); Mich.Comp.Laws § 750.-396 (1979); Minn.Stat. § 609.735 (1990); N.C.Gen.Stat. §§ 14–12.7, 14–12.8, 14–12.11 (1986); Okla.Stat. tit. 21, § 1301 (1981); and W.Va.Code § 61–6–22 (1989).

**7.** *See, e.g.,* Note, *Klan, Cloth & Constitution: Anti–Mask Laws & the First Amendment,* 25 Ga.L.Rev. 819 (1991); Rey, *Antimask Laws: Exploring the Outer Bounds of Protected Speech Under the First Amendment—State v. Miller, 260 GA. 669, 398 S.E.2d 547 (1990),* 66 Wash.L.Rev. 1139 (1990).

From the perspective of the 1990's, it is easy to lose sight of the Klan's history of vicious racist violence against blacks. *See* David Chalmers, *Hooded Americanism: The First Century of the KKK, 1865–1965* (1965).

statutes sometimes extends to expressive conduct of various kinds, it is not surprising that they have been the focus of variety of constitutional attacks not unlike those asserted by petitioner in this case.[8] Specifically, petitioner here claims (i) that § 18.2–422, as applied to him, precludes him from wearing a symbol of his Klan beliefs and thus unconstitutionally infringes his free speech rights; and (ii) that the statute denies him equal protection of laws by distinguishing between snap-on masks and masks integral to the hood. Petitioner also claims that he was denied due process in the state court proceeding, and that the trial judge imposed an unduly harsh sentence for the impermissible purpose of punishing him for his Klan beliefs. Each of these claims is separately addressed.

### Symbolic Speech

In addressing matters of free speech, courts must be mindful that "[i]f there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414, 109 S.Ct. 2533, 2544, 105 L.Ed.2d 342 (1989) (citations omitted) (burning the American flag during political protest rally was constitutionally-protected speech). Yet freedom of speech under the Constitution is not absolute.[9] The threshold issue in First Amendment analysis, therefore, is whether the "speech" in question is constitutionally-protected. It is well-settled that the First Amendment's protection of freedom of speech extends beyond traditional verbal and written communication; it also protects certain forms of communicative conduct or "symbolic speech".[10] As the Supreme Court stated in *Johnson:*

The First Amendment literally forbids the abridgement only of "speech," but we have long recognized that its protection does not end at the spoken or written word. While we have rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea," *United States v. O'Brien*, [391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968)], we have acknowledged that conduct may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence* [*v. Washington*, 418 U.S. 405, 409, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974)].

491 U.S. at 404, 109 S.Ct. at 2539.

The test for determining whether conduct qualifies as protected "speech" is whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404, 109 S.Ct. at 2539 (*quoting Spence*, 418 U.S. at 410–11, 94 S.Ct. at 2730). Thus, proof of three elements is required to establish that conduct is communicative or expressive within the meaning of First Amendment analysis: (i) requisite intent; (ii) a particularized message; and (iii) likely understanding by viewers. The nature and context of the conduct are essential considerations in the application of this test. *See Spence*, 418 U.S. at 409–10, 94 S.Ct. at 2730 (flag hung upside down with peace symbol attached displayed at a time roughly simultaneous with the Kent State tragedy and United States' incursion into Cambodia was pro-

---

**8.** For a list and summary of such cases, *see* Annot. *Validity and Construction of State Statute or Ordinance Prohibiting Picketing, Parading, Demonstrating, or Appearing in Public While Masked or Disguised*, 2 A.L.R.4th 1241 (1980 and 1991 Supp.).

**9.** *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (recognizing a narrow class of unprotected "speech", including the lewd and obscene, the profane, the libelous, and the insulting or "fighting words").

**10.** *See, e.g., Johnson*, 491 U.S. at 404, 109 S.Ct. at 2539 (flag-burning during political protest rally); *Schact v. United States*, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970) (wearing American military uniforms in drama criticizing United States' involvement in Vietnam War); *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (wearing black armbands as protest against United States' involvement in Vietnam War).

tected expression); *Tinker v. Des Moines Indep. Community School Dist.,* 393 U.S. 503, 89 S.Ct. 733 (1969) (black armbands worn in a school environment conveyed unmistakable message of concern about Vietnam hostilities). If the conduct in question is not communicative or expressive under this test, no First Amendment protection attaches. Accordingly, a First Amendment challenge to a statute proscribing that conduct fails. If, on the other hand, conduct is found to be communicative or expressive, a court must then proceed to consider whether a statute proscribing that conduct impermissibly restricts symbolic speech.

■ Generally, the government "has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." *Johnson,* 491 U.S. at 406, 109 S.Ct. at 2540. *See also O'Brien,* 391 U.S. at 376–77, 88 S.Ct. at 1678–79; *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984). What the government may not do, however, is proscribe certain conduct *because* it has expressive content; hence, any law *directed at* the communicative aspect of conduct must be justified by a substantial showing of need by the government, a showing that must survive "the most exacting scrutiny." *Johnson,* 491 U.S. at 412, 109 S.Ct. at 2543–44 (*quoting Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988)). Where, on the other hand, the government's asserted interest is unconnected to the suppression of free expression, a lower standard of review applies:

> [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial government interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is not greater than is essential to the furtherance of tan interest.

*O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679. This more lenient test applies if (i) the government's asserted interest is unrelated to the suppression of expression; and (ii)

that interest is implicated on the facts presented. *See Johnson,* 491 U.S. at 407, 109 S.Ct. at 2541. If either of these elements is absent, the higher "substantial showing" test applies.

Here, the burden is on petitioner to demonstrate, in the first instance, that his mask-wearing amounted to constitutionally-protected symbolic speech. *See Clark,* 468 U.S. at 293 n. 5, 104 S.Ct. at 3069 n. 5. The record reflects that petitioner's proof fell short in this regard. At trial, petitioner testified that he was wearing the official Klan costume and that he wore a mask because it was "part of the symbolic symbol of the Klan." *See Hernandez,* 406 S.E.2d at 399. He also acknowledged that his female companion, who was not arrested, wore the same type of costume, but without the hood or mask. Another witness, Roger Kelly, self-described "Grand Dragon" of Virginia's Klan, testified that the pointed hood was a Klan symbol, but that wearing a detachable mask was optional. *Id.* Thus, Mr. Kelly's testimony on the issue of the significance of the mask differed from petitioner's testimony. At the close of the evidence, the trial court concluded that "the mask is not part of the, a necessary part, of the symbolic speech of this particular organization" and that "this organization and its members can express themselves fully without the need for that liner or that mask to go across the face." *Id.* Thereafter, the Court of Appeals of Virginia upheld the trial court, concluding that "the record does not support a finding that the wearing of a mask conveyed a particularized message that would have been likely to have been understood by those who viewed it." *Id.* at 400.

■ These findings by the state courts are mixed findings of fact and law requiring the application of legal principles to historical facts. *See Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980). Pursuant to the applicable habeas statute, 28 U.S.C. § 2254, state court findings of fact are presumed correct on federal habeas review absent the presence of one of eight enumerated factors negating that presumption. *See* 28

U.S.C. § 2254(d).[11]  *See also Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).  Thus, to the extent the Virginia state courts' findings are factual, they are presumed correct because none of the statutory negating factors are implicated on the record presented.  *See* 28 U.S.C. § 2254.  In particular, the factual finding that members of this particular Klan organization fully express themselves without the use of the mask is sufficiently supported by the evidence, given the testimony of Mr. Kelly that the detachable mask was optional and the fact that petitioner's leafleting companions, including the robed woman, were not similarly masked.[12]  To the extent that the state courts' findings amount to legal conclusions, they are open to collateral attack here.  *See Cuyler,* 446 U.S. at 342, 100 S.Ct. at 1715.  While it is clearly established that state court conclusions of law are not entitled to the same deference accorded state court factual findings, *see Cuyler,* 446 U.S. at 342, 100 S.Ct. at 1715, whether federal habeas review of legal conclusions is *de novo* or in some fashion deferential is a question the Supreme Court has thus far declined to resolve.  *See West v. Wright,* — U.S. —, —, 112 S.Ct. 2482, 2492 (1992).  But even assuming the propriety of *de novo* review, the Court affirms the state courts' conclusion that no First Amendment protection attaches to petitioner's mask-wearing conduct.[13]  The testimony adduced at trial and petitioner's pleadings do not establish that the wearing of the mask conveyed a particularized message.  It is clear that petitioner's white robes and hood symbolized the Klan's beliefs and were likely to be so understood by those who viewed them.  By contrast, as the Klan "Grand Dragon" testified, the mask is an optional accessory to the costume.  It follows that the mask contributes nothing to the message already conveyed by the remainder of the costume, nor does it convey any independent message.[14]  Thus, on the facts presented, petitioner's mask-wearing did not constitute expressive conduct entitled to First Amendment protection because it did not convey a particularized message.  *See Spence,* 418 U.S. at 410–11, 94 S.Ct. at 2730.  Given this, the First Amendment analysis properly ends.  This Court, accordingly, upholds the decisions of the state courts and dismisses this claim.

### Denial of Equal Protection

■  Next, petitioner advances two equal protection claims.  First, petitioner claims that Virginia's anti-mask statute is unconstitutional as construed by the state courts because it irrationally criminalizes wearing Klan hoods with snap-on masks, but not one-piece Klan hoods with non-detachable masks.  Petitioner contends that the state courts have improperly vested clothing snaps with constitutional significance, and, therefore have denied equal protection to

---

**11.**  The eight factors are: (i) that the merits of the factual dispute were not resolved in the state court hearing; (ii) that the factfinding procedure in the state court was inadequate; (iii) that the material facts were not adequately developed in the state court proceeding; (iv) that the state court lacked subject matter or personal jurisdiction; (v) that the state court deprived an indigent petitioner of his constitutional rights by failing to appoint counsel; (vi) that the petitioner did not receive a full, fair, and adequate hearing in the state court; (vii) that the petitioner was otherwise denied due process of law; and (viii) that the factual determination of the state court is not fairly supported by the record.  *See* 28 U.S.C. § 2254(d).

**12.**  Nor is there anything in the record to suggest that the trial court erred in according more weight to the testimony of Mr. Kelly than to that of petitioner regarding the significance of the mask.

**13.**  Since the precedent applied in this case predates petitioner's conviction, *Teague* and its progeny do not bar federal habeas review of this state court determination.

**14.**  A different result might have obtained had the facts enabled petitioner to argue that by forcing Klan members to unmask themselves, the statute unconstitutionally restricts their First Amendment rights to anonymous speech and free association.  *See, e.g., Talley v. United States,* 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); *Goland v. United States,* 903 F.2d 1247 (9th Cir.1990); *Wilson v. Stocker,* 819 F.2d 943 (10th Cir.1987).  Although petitioner presented this claim in his original § 2254 pleadings, counsel for petitioner in oral argument conceded this claim and withdrew it.

those Klan members who choose to wear snap-on masks.

Although imaginative, this argument is meritless. Neither the statute nor the state courts attach any significance to the manner with which a mask is attached. The key element of the statute is a mask which is worn "so as to conceal the identity of the wearer...." Va.Code 18.2–422. How the mask is affixed to the face or costume is of no concern under the statute. Both the snap-on mask wearer and the one-piece hood wearer are treated equally by the statute.[15]

■ In his second equal protection claim, petitioner argues that the anti-mask statute violates the Equal Protection Clause because it criminalizes "politically-motivated" mask wearing, but not "holiday" or "bona fide theatrical" mask-wearing. Petitioner contends that he would not have been arrested had he been wearing the same costume with a snap-on mask in a theatrical production of *Birth of a Nation*. Such a distinction, asserts petitioner, is a denial of equal protection. This argument is baseless. The exceptions for holiday or theatrical masks do not create a distinction between non-political and politically-motivated mask-wearing. Indeed, politically-motivated mask-wearing for traditional holiday purposes (for example, wearing a Halloween mask caricaturing a political leader) or bona fide theatrical purposes do not violate the statute. The statutory exceptions are not content-based restrictions; rather, they are akin to permissible time, place, and manner restrictions. *See Clark*, 468 U.S. at 293–94, 104 S.Ct. at 3069; *cf. Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). Simply put, the statute does not criminalize politically-motivated mask wearing. Moreover, petitioner was not arrested for espousing Klan beliefs. If that were the case, his companions who

were also distributing Klan literature would also have been arrested. And significantly, the state tribunals and this Court have determined that neither petitioner's mask, nor the wearing of it, conveyed any political message. Petitioner was arrested not for his political beliefs, but solely for wearing a mask which concealed his identity. Since petitioner's arrest was not politically-motivated and because the statute does not distinguish between political and non-political mask-wearing, this equal protection claim has no merit. Accordingly, petitioner's equal protection claims must be dismissed.[16]

### Due Process

■ Petitioner contends he was denied Due Process on appeal because the Virginia Court of Appeals found that he had the intent to conceal his identity sufficient to merit his conviction, despite the fact that intent was not an issue at trial. He asserts that the Court of Appeals' findings (i) that intent is an element of a § 18.2–422 violation and (ii) that petitioner had demonstrated such an intent amount to conviction by appellate fiat. Such a conviction, according to petitioner, violates his right to notice and opportunity to be heard as required by the Fourteenth Amendment.

As it happens, the Court need not reach the merits of this claim because petitioner implicitly waived it when, at trial, his counsel conceded a *prima facie* violation of the statute. Specifically, counsel stated:

I can at this point, perhaps, give the Commonwealth a hand by stipulating on behalf of the defendant, Buddy Hernandez, that being over sixteen years of age, he did wear the hood or other device whereby a substantial portion of his face was hidden or covered, so as to conceal his identity and did appear in a public place in the City of Fredericksburg, on or about August 13th, 1989. Those facts

---

15. It may be, of course, that if wearing the hood were to constitute symbolic speech under the *Spence* test, then a person convicted under the anti-mask statute for wearing a hood with a non-detachable mask might successfully argue, on a factual record different from that presented here, that the statute unconstitutionally prohibits him from wearing the hood. Of course, a

pair of scissors might suffice to cut the heart out of this argument.

16. A successful equal protection attack against the anti-mask statute might be made by a person who also makes out a First Amendment symbolic speech argument.

are not at issue, and a *prima facie* case is conceded.

Counsel stipulated to a violation of the statute in order to assert a "constitutional" defense. By stipulating to a *prima facie* case, petitioner effectively admitted all elements of the offense. In so doing, he essentially assumed the risk that subsequent courts might view the statute differently from the way he then interpreted it. Admittedly, counsel's stipulation if a *prima facie* case does not specifically mention the element of intent. But petitioner cannot be permitted to stipulate to a *prima facie* case and then, when the constitutional defense fails, seek to attack collaterally the sufficiency of proof on an element of the offense. Accordingly, this claim must be dismissed.

### Sentencing

In his final claim, petitioner asserts that the trial judge impermissibly imposed a more severe sentence than would otherwise have been imposed for a violation of the anti-mask statute for the purpose of punishing him for his Klan beliefs. Petitioner bases his claim on the following statement made by the trial judge at sentencing: "Despite the fact that I disagree with [petitioner's beliefs] wholeheartedly, I am not going to punish him unduly because of those beliefs." *Hernandez*, 406 S.E.2d at 401. Petitioner contends that use of the word "unduly" indicates that, to some extent at least, the trial judge punished petitioner for his "concededly offensive" beliefs, in violation of the First Amendment. The Virginia Court of Appeals rejected this view of what occurred; instead if found the trial judge's statement to "mean that the trial court would not punish [petitioner] because of his beliefs to an extent to which he would not otherwise be deserving." 406 S.E.2d at 401. This Court defers to the state appellate court's reasonable interpretation of the trial judge's statement, and, accordingly, dismisses this claim.

### Conclusion

As petitioner has failed to demonstrate that his conviction under Va.Code § 18.2–422 was unconstitutional, his petition for writ of habeas corpus is not appropriately granted. Accordingly, the Court grants respondent's motion and dismisses this action.

An appropriate Order shall issue.